# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| MICHELE POTTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21-CV-419 PLC |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Michele Potts seeks review of the decision of Defendant Social Security Acting Commissioner Kilolo Kijakazi denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act. For the reasons set forth below, the Court reverses and remands the Commissioner's decision.

### I.   Background and Procedural History

On May 31, 2019, Plaintiff, who was born in January 1967, filed applications for DIB and SSI, alleging she was disabled as of October 5, 2018, as a result of: coronary artery disease, post-traumatic stress disorder (PTSD), depression, anxiety, and chronic back pain. (Tr. 330-346, 347-363). The Social Security Administration (SSA) denied Plaintiff's claim, and she filed a timely request for a hearing before an administrative law judge (ALJ).  (Tr. 330-346, 347-363, 375-381, 382-386)

---

[1] Kilolo Kijakazi became the Acting Commission of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 205(g) of the Social Security Act, 42 U.S.C. §405(g).

The SSA granted Plaintiff's request for review and conducted a hearing on June 2, 2020. (Tr. 292-325) On July 31, 2020, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 8-28) Plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council, which denied review. (Tr.1-4, 29-31, 435-438) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

**II.     Evidence before the ALJ**

With regard to Plaintiff's medical records the Court accepts the facts as presented in the parties' respective statements of facts and responses. [ECF Nos. 27-1, 34-1] The Court will discuss specific facts relevant to the parties' arguments as needed.

A. Medical Source Statements

On August 27, 2019, Dr. Michael O'Day, D.O., a State-agency medical consultant reviewed the record and opined that Plaintiff could perform light work with certain postural and environmental limitations.[2] (Tr. 339-341) Dr. O'Day found Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, perform unlimited pushing or pulling, stand and walk for 6 hours, and sit for 6 hours. (Tr. 339) In support of these exertional limits, Dr. O'Day cited to Plaintiff's reported activities of daily living and subjective complaints of pain, and "April 2019 revealed EF 72% and no further stenting (of the previously stented) right or left anterior descending coronary arteries." (Tr. 339-40) Dr. O'Day included postural limitations of occasional climbing, stooping, kneeling, crouching, and crawling and unlimited balancing. (Tr. 340) Dr. O'Day imposed these limits "due to [Plaintiff's] lumbar OA." (Tr. 340) Dr. O'Day included environment limitations for Plaintiff to avoid extreme heat, humidity, vibration, fumes, odors, dusts, gases, poor

---

[2] The SSA included Dr. O'Day's opinion in its "Disability Determination Explanation" in denying Plaintiff's initial claim for benefits. (Tr. 330-346)

2

ventilation, and workplace hazards. (Tr. 340-41) Dr. O'Day stated these were "precautionary limits to minimize risk of exacerbation or injury to [Plaintiff due to] allegations." (Tr. 341) Under a section titled "RFC-Additional Explanation[,]" Dr. O'Day included the following notation:

> Claimant was recently referred out to [an] orthopedic specialist for her complaints of LBP with 6/19 Lumbar spine XR showed mild degenerative change lower thoracic spine, retrolisthesis lumbar spine with moderate degenerative change at SI joint. 6/19 Exam shows normal gait and lumbar spine range of motion, no edema, +SLR, tenderness noted. She was also referred out to physical therapy. She hasn't seen ortho. 6/27/19 PT for dx of sacrococcygeal disorder NOS, LBP, reports difficulty sitting for extended periods and pain with stairs. Reported LBP began in 2/19 when she fell on ice, she took steroids and meloxicam. Now her pain is 2/10. Decreased LLE at 4/5. Decreased ROM left hip. 4/19 exam no tenderness. Normal EKG. 5/19 had stents placed in LAD, noted ASA-3 severe systemic disease. LVEF 65%. Claimant has diagnosis of CAD. Claimant records throughout show normal gait, neuro focal deficits.

(Tr. 341)

The record also included a physical RFC assessment completed on May 21, 2020 by Brenda Rodi, N.P. and signed by Dr. John Ellena, Plaintiff's primary care physician since 2010. (Tr. 1717-1720) The assessment states Plaintiff's diagnoses include coronary artery disease, major depression, chronic musculoskeletal pain, obsessive compulsive disorder, generalized anxiety disorder, and PTSD. (Tr. 1717) Plaintiff's symptoms include "chronic pain [in the] bilateral wrists, [bilateral] sacroiliac joints, [and] thoracic and lumbar spine" and headaches occurring three to four days per week. (Tr. 1717) Dr. Ellena's clinical findings include "[right] wrist swelling with tenosynovitis [and] mid back pain and tenderness." (Tr. 1717) Dr. Ellena opined Plaintiff could walk one block; sit, stand, or walk for less than 2 hours a day; sit for 15-minute intervals; and stand for 10-minute intervals. (Tr. 1718) Dr. Ellena found Plaintiff needed to shift positions at will, walk every 6 to 10 minutes, and take hourly breaks. (Tr. 1718-19) Dr. Ellena concluded Plaintiff would never lift or carry any weight, and could occasionally manipulate with her fingers and reach overhead but could never grasp, turn, or twist objects. (Tr. 1719) Dr. Ellena estimated Plaintiff

3

could miss work more than four days per month on average. (Tr.  1719)  Dr. Ellena opined that Plaintiff was further limited by her fatigue and that she lacked mental focus due to depression, anxiety, and chronic musculoskeletal pain. (Tr.  1720)

The completed assessment form included a directive for the provider to "[a]ttach all relevant treatment notes, radiologist reports, and test results not provided previously to the [SSA]." (Tr.  1717). Dr. Ellena attached treatment notes from Plaintiff's appoint on May 19, 2020, conducted two days before the assessment was completed. (Tr.  1721). The May 19 appointment was a follow-up after Plaintiff appeared to have suffered from an allergic reaction to an antibiotic prescribed for a sinus infection.  (Tr.  1721).

B.  Vocational Expert's Testimony

Vocational expert Delores Gonzalez testified at the hearing. (Tr.  320)  The ALJ asked Ms. Gonzalez to consider a hypothetical individual with Plaintiff's age, education, and work experience who could perform light work with the following limitations:

> never climb ladders, ropes or scaffolds, occasionally climb ramp, stairs, balance, stoop, kneel, crouch, crawl, frequently handle, and finger, avoid concentrated exposure to extreme heat, humidity, excessive vibration and pulmonary irritants, avoid all exposure to workplace hazards such as operational control of moving machinery, unprotected heights and working with sharp objects, work would be further limited to simple, routine, repetitive tasks, in a low stress job defined as only occasional decision making, occasional changes in work setting, no pace, production and quotas. Job responsibilities do not require public interaction, only occasional contact with coworkers, no tandem tasks, and occasional supervision.

(Tr.  322-23) Ms. Gonzalez concluded that such an individual could not perform Plaintiff's past work but could perform other jobs such as photocopy machine operator, mail sorter, and price marker, jobs classified as light work.  (Tr.  323).  In regard to absences, Ms. Gonzalez stated that employers customarily tolerated "one day a month" and that "the most recent research indicates between two and 12 days per year." (Tr.  323)  Ms. Gonzalez testified rest breaks are within the

4

employer's discretion and that employers customarily provide two 10-15 minutes breaks and a single 30-minute lunch period, spaced approximately two hours apart. (Tr. 323). Ms. Gonzalez testified exceeding these customary limitations would preclude competitive employment. (Tr. 323). Upon questioning by Plaintiff's counsel, Ms. Gonzalez testified she "would have to find other jobs" if the hypothetical individual was limited to occasional handling and fingering. (Tr. 324).

### III.    Standards for Determining Disability Under the Social Security Act

Eligibility for disability benefits under the Social Security Act ("Act") requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1); 42 U.S.C. §1381a. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A); 42 U.S.C. § 1382c (a)(3)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the ALJ engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520(a), 416.920(a).  Those steps require a claimant to first show that he or she is not engaged in substantial gainful activity. Id.  Second, the claimant must establish that he or she has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(a), (c); 416.920(a), (c).  "The sequential evaluation process

5

may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [the claimant's] ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)). At step three, the ALJ considers whether the Plaintiff's impairment meets or equals an impairment listed in 20 C.F.R., Pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a), (d); 416.920(a), (d). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520 (d), (e); 416.920 (d), (e).

Prior to step four, the Commissioner must assess the claimant's residual functional capacity (RFC), which is "the most a claimant can do despite [his or her] limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); see also 20 C.F.R. §§ 404.1520(a), (e); 416.920(a), (e); 416.945(a)(1). RFC is "based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." Id. (quoting Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006)).

At step four, the ALJ determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a), (f); 416.920(a), (f); see McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, the claimant will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. McCoy, 648 F.3d at 611. See also 20 C.F.R. §§ 404.1520(f); 416.920(f).

Through step four, the burden remains with the claimant to prove that he or she is disabled. Moore, 572 F.3d at 523. At step five, the burden shifts to the Commissioner to establish that, given

the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R §§ 404.1520(a), (g); 404.1560 (c); 416.920(a), (g); 416.960(c); Brock v. Astrue, 674 F.3d 1062, 1064 (8th Cir. 2012). If the claimant cannot make an adjustment to other work, then he or she will be found to be disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

IV.     **ALJ's Decision**

Applying the five-step evaluation process, the ALJ found Plaintiff: (1) had not engaged in substantial gainful activity since October 5, 2018, the alleged onset date; and (2) had the severe impairments of degenerative disc disease, ischemic heart disease with hypertension and hyperlipidemia, depression, anxiety, and PTSD. (Tr. 13-14)  The ALJ concluded Plaintiff had the non-severe impairment of "wrist tenderness/swelling which is concerning for tenosynovitis[,]" but that the condition did not meet the 12-month durational requirement.  (Tr. 14)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 14) The ALJ found Plaintiff's mental impairments considered singly and in combination, did not meet or medically equal the criteria of listings 12.04, 12.06, or 12.15 because Plaintiff demonstrated only mild or moderate limitations in the four broad functional areas under paragraph B of the listings. (Tr. 14-15) The ALJ concluded Plaintiff had mild limitations in the area of adapting or managing oneself and moderate limitations in the remaining three areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace. (Tr. 15)

The ALJ determined Plaintiff had the RFC to:

perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). However, she can never climb ladders, ropes or scaffolds but can occasionally

7

> climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can frequently handle and finger. She must avoid concentrated exposure to heat, humidity, excessive vibration, and pulmonary irritants. [Plaintiff] must avoid all exposure to workplace hazards such as unprotected heights, operational control of moving machinery, and working with sharp objects. She is limited to simple, routine, repetitive tasks in a low stress job defined as only occasional decision making and occasional changes in the work setting and no paced production quotas. Her job responsibilities would not require public interaction, only occasional contact with coworkers, no tandem tasks, and occasional supervision.

(Tr. 16-17)

In making this assessment, the ALJ stated he "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. 404.1520c and 416.920c." (Tr. 17). The ALJ also considered Plaintiff's reported symptoms and found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 17)  Specifically, the ALJ found Plaintiff's statements regarding the severity and limiting effects of her conditions were inconsistent with her described daily activities and the medical evidence. (Tr. 18-19) The ALJ concluded the medical evidence demonstrated that Plaintiff's heart condition, hypertension, and hyperlipidemia were controlled with medication. (Tr. 19) The ALJ noted Plaintiff's reports of back pain in June 2019 following two falls and that imaging of Plaintiff's lumbar and thoracic spine revealed mild degenerative changes, but that "physical examinations do not document substantial musculoskeletal problems, and she has not sought out specialized pain management treatment." (Tr. 19)

The ALJ also considered Dr. O'Day's August 2019 opinion that Plaintiff was able to perform light work with some environment and occasional postural limitations. (Tr. 19). The ALJ found Dr. O'Day's opinion to be "somewhat persuasive, as it is supported by Dr. O'Day's analysis

of the evidence, but the record post-dating his opinion supports additional limits, including frequent handling and fingering." (Tr. 19).

The ALJ found N.P. Rodi's and Dr. Ellena's opinion to be "not persuasive for several reasons." (Tr. 20). The ALJ stated:

> The physical examination at the appointment when the statement was issued was entirely negative except for a rash, and the mental status examination had a depression screening that was below the threshold for administering the screening. The treatment notes do not indicate the claimant suffers from deficits in attention or concentration, and there are no examinations or objective testing that align with the assessment that the claimant can walk only one block, sit/stand at less than the sedentary exertional level, shift positions at will, require hourly breaks, never lift (even less than 10 pounds), or never use her hands to grasp/turn/twist objects among other items. Further, Nurse Rodi does not indicate the claimant suffers from fatigue when asked directly on the form, but only notes it in passing in response to a later question. Also, there is no evidence in the file to show the claimant suffers from a neck condition which would limit her accordingly – such as in reaching – as noted by Nurse Rodi. Additionally, there is no support for the claimant missing work 4 days or more each month. This medical source statement is simply entirely inconsistent with the objective record and this is not persuasive at all.

(Tr. 20).

Based on the vocational expert's testimony, the ALJ concluded Plaintiff was unable to perform any past relevant work. (Tr. 21) However, based on the RFC, Plaintiff's age, education, and prior work experience, and the vocational expert's testimony, the ALJ found Plaintiff was able to perform other jobs that existed in significant numbers in the national economy, such as photocopy machine operator, mail sorter, and price marker. (Tr. 21-22) The ALJ therefore concluded Plaintiff was not disabled. (Tr. 22)

V.     **Discussion**

On appeal, Plaintiff argues the ALJ failed to follow the regulations' requirements for evaluating medical opinion evidence by analyzing the supportability and consistency of the opinions. Specifically, Plaintiff contends the ALJ's evaluation of Dr. O'Day's opinion is

inadequate because it fails to discuss the consistency of the opinion and the ALJ's analysis of the supportability factor is no more than a summary statement that the doctor's opinion is supported. Plaintiff contends the ALJ's evaluation of Dr. Ellena's medical opinion was also inadequate because the ALJ failed to evaluate the supportability of the opinion. Plaintiff also asserts the ALJ's RFC determination is not supported by substantial evidence because the ALJ relied on outdated opinions from non-treating medical sources, relied upon his own interpretation of the medical records, and improperly discounted Plaintiff's subjective complaints. [ECF No. 27]

The Commissioner responds the ALJ properly evaluated Dr. O'Day's opinion because the "ALJ found Dr. O'Day's finding supported by the doctor's analysis of the evidence." [ECF No. 34 at 9] The Commissioner further contends the ALJ properly evaluated Dr. Ellena's opinion because, while not using the word "supportability," the ALJ explained that Plaintiff's medical treatment with the provider did not support the proposed limitations and found "that the physical examinations and objective findings were inconsistent with the assessment[.]" [ECF No. 34 at 12] The Commissioner further asserts that the ALJ's RFC was supported by substantial evidence on the record as a whole and that the ALJ properly assessed Plaintiff's subjective complaints and did not err by relying on the state agency consultants' opinions.

A.  Standard of Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Chesser v. Berryhill, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)). A court must consider "both evidence that supports and evidence that detracts from the ALJ's determination, [but it] may not reverse the Commissioner's decision merely because substantial

10

evidence supports a contrary outcome." Id. (quoting Prosch, 201 F.3d at 1012) (internal quotation marks omitted).

A court does not "reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)). Therefore, a court must affirm the ALJ's decision if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings[.]" Wright v. Colvin, 789 F.3d 847, 852 (8th Cir. 2015) (quoting Perkins v. Astrue, 648 F.3d 892, 897 (8th Cir. 2011)).

For claims filed on or after March 27, 2017, such as Plaintiff's claim, the ALJ evaluates medical opinions and prior administrative medical findings under 20 C.F.R. §§404.1520c, 416.920c. The regulations provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c (a), 416.920c (a). Rather, the ALJ will consider all medical opinions according to several enumerated factors: (1) supportability; (2) consistency; (3) relationship with the claimant, which includes the length of treatment relationship, the frequency of examinations, the purpose of the treatment, the extent of treatment, and the examining relationship; (4) the medical source's specialization; and (5) other relevant factors such as the medical source's familiarity with the other evidence and the source's understanding of the SSA's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c (a), (c); 416.920c (a), (c).

The ALJ must articulate in his determination how persuasive he finds all of the medical opinions and prior administrative medical findings in the case record. 20 C.F.R. §§ 404.1520c (b),

416.920c (b). The most important factors are supportability and consistency, and the ALJ must explain in his determination how he considered these factors for each medical source's medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c (a), (b)(2); 416.920c (a), (b)(2). Dornbach v. Saul, 4:20-CV-36 RLW, 2021 WL 1123573, at *4 (E.D. Mo. Mar. 24, 2021); Bradley v. Kijakazi, 1:22-CV-19-SNLJ, 2022 WL 4482407, at *4 (E.D. Mo. Sept. 27, 2022); Martini v. Kijakazi, 4:20-CV-1711-CDP, 2022 WL 705528, at * 4 (E.D. Mo. Mar. 9, 2022). Generally, the ALJ is not required to explain his consideration of the remaining factors.[3] 20 C.F.R. §§ 404.1520c (b)(2); 416.920c (b)(c); Martini, 2022 WL 705528, at * 4.

"An ALJ commits legal error if the ALJ fails to comply with relevant Social Security regulations, which includes the discussion of § 404.1520c factors." Bradley, 2022 WL 4482407, at *4. Thus, "[a]n ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal." Martini, 2022 WL 705528, at * 4  (citing Bonnett v. Kijakazi, 859 Fed. Appx. 19 (8th Cir. 2021) (unpublished) (per curiam) (citing Lucas v. Saul, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in regulations, as failure to comply with opinion-evaluated regulation was legal error). See also Starman v. Kijakazi, No. 2:20-CV-35-SRC, 2021 WL 4459729, at *5 (E.D. Mo. Sept. 29, 2021);  Dornbach, 2021 WL 1123573, at *4 (ALJ's failure to properly evaluate the persuasiveness of medical source's opinion under 20 C.F.R. §404.1520c is reversible error). Furthermore, '[t]he Court cannot 'fill in the gaps' for the ALJ: if the ALJ does not provide some explanation for a finding of inconsistency or supportability, the Court must reverse." Bradley, 2022 WL 4482407, at *5.

---

[3] The ALJ must articulate his consideration of the remaining factors when two or more medical opinions or prior administrative medical findings about the same issue are not exactly the same and both opinions are equally well supported and consistent with the record. 20 C.F.R. §§ 404.1520c (b)(2), 416.920c (b)(2).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical findings will be." 20 C.F.R. §§ 404.1520c (c)(1); 416.920c (c)(1). Thus, supportability is an assessment of how well a medical source supported and explained his or her opinion. Daniels v. Kijakazi, No. 21 Civ. 712 (GWG), 2022 WL 2919747, at *5, (S.D. N.Y. July 26, 2022). The ALJ may consider whether the physician's own treatment notes support the physician's opinion. Starman, 2021 WL 4459729, at *4.

The regulations provide that "consistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c (c)(2); 416.920c (c)(2). "Thus, '[c]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them.'" Daniels, 2022 WL 2919747, at *5 (quoting Cuevas v. Comm'r of Soc. Sec., 2021 WL 363682, at *10 (S.D. N.Y. Jan. 29, 2021).

The ALJ's consideration of Dr. O'Day's prior administrative medical finding and Dr. Ellena's medical opinion in determining Plaintiff's RFC is the primary issue in this case. Dr. O'Day concluded Plaintiff could perform light work with some environmental and occasional postural limitations while Dr. Ellena imposed significant restrictions beyond those for even sedentary work.[4]

---

[4] Sedentary work requires lifting no more than 10 pounds at a time and occasionally lifting or carrying small items. 20 CFR §§ 404.1567(a), 416.967 (a). Sedentary jobs involve sitting and occasional walking and standing. 20 CFR §§ 404.1567(a), 416.967 (a). Furthermore, Dr. Ellena's opinion restricted Plaintiff to only occasional fingering and handling.

13

The ALJ largely adopted the restrictions proposed by Dr. O'Day with only a few additional limitations, including: (1) "frequent handling and fingering," based on the record after Dr. O'Day rendered his opinion, (2) never, instead of occasional, climbing ladders, ropes, or scaffolds; and (3) occasional, instead of unlimited, balancing. The ALJ found Dr. O'Day's opinion to be "somewhat persuasive" because it was "supported by Dr. O'Day's analysis of the evidence, but, the record post-dating his opinion supports additional limits, including frequent handling and fingering." (Tr.  19).

Plaintiff contends the ALJ failed to follow the dictates of Sections 404.1520c and 416.920c in evaluating the persuasiveness of Dr. O'Day's opinion. Specifically, Plaintiff argues the ALJ's evaluation of the supportability factor is no more than a "summary" statement that the doctor's opinion is supported with "no explanation of how the evidence that is recited by Dr. O'Day was used to determine" Plaintiff's RFC and that the ALJ wholly failed to discuss the consistency factor.

The Commissioner provides no response to Plaintiff's argument that the ALJ failed to consider the consistency of Dr. O'Day's opinion. Instead, the Commissioner argues the ALJ "properly considered" Dr. O'Day's opinion in that "[t]he ALJ found Dr. O'Day's findings supported by the doctor's analysis of the evidence." [ECF No. 34]. The Commissioner provides no authority in support of its assertion that the ALJ's summary statement that Dr. O'Day's conclusion "is supported by Dr. O'Day's analysis of the evidence" satisfies the regulations' requirement that the ALJ "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions…in [the] determination or decision." 20 CFR §§ 404.1520c (b)(2); 404.416c (b)(2).  This court has previously found that an "ALJ's sprinkling of the words 'support' and 'consistent' in her cursory treatment of the [medical] opinions is insufficient to satisfy the Regulation's requirement that the ALJ 'explain' how she considered

14

these factors in determining the persuasiveness of a medical opinion." Martini, 2022 WL 705528 at *4. Here, the ALJ's cursory statement that Dr. O'Day opinion was supported by Dr. Day's review of the record does not satisfy the regulations' requirement that the ALJ explain the supportability of the medical source's opinion.  Furthermore, as the Plaintiff's correctly observes and the Commissioner does not contest, the ALJ wholly failed to discuss or explain the consistency factor in evaluating Dr. O'Day's opinion, as required by Sections 404.1520c and 404.416c.

In addition, Plaintiff contends the ALJ erred by failing to sufficiently evaluate the supportability of Dr. Ellena's opinion. The ALJ found Dr. Ellena's opinion was "not persuasive for several reasons[,]" stating

> The physical examination at the appointment when the statement was issued was entirely negative except for a rash, and the mental status examination had a depression screening that was below the threshold for administering the screening. The treatment notes do not indicate the claimant suffers from deficits in attention or concentration, and there are no examinations or objective testing that align with the assessment that the claimant can walk only one block, sit/stand at less than the sedentary exertional level, shift positions at will, require hourly breaks, never lift (even less than 10 pounds), or never use her hands to grasp/turn/twist objects among other items. Further, Nurse Rodi does not indicate the claimant suffers from fatigue when asked directly on the form, but only notes it in passing in response to a later question. Also, there is no evidence in the file to show the claimant suffers from a neck condition which would limit her accordingly – such as in reaching – as noted by Nurse Rodi. Additionally, there is no support for the claimant missing work 4 days or more each month. This medical source statement is simply entirely inconsistent with the objective record and this is not persuasive at all.

(Tr. 20).

Plaintiff argues the ALJ's conclusion that Dr. Ellena's opinion was unsupported is flawed and it is "not clear which objective findings the ALJ is referring to or how those findings support the findings outlined in the ALJ's RFC." [ECF No 27] The Commissioner responds that "[w]hile not using the word supportability" the ALJ observed that Dr. Ellena's assessment was incongruent with the physical examination conducted in May

15

2020 and Plaintiff's "treatment notes[.]" [ECF No 34] The Commissioner argues "the ALJ noted that the physical examinations and objective findings were inconsistent with the assessment that Plaintiff can walk only one block, sit/stand at less than sedentary exertional level, required hourly breaks, never life, or never use her hands to grasp/turn/twist objects." [ECF No. 34]

While the ALJ provided an explanation for his evaluation of Dr. Ellena's opinion, it is difficult to discern from the ALJ's decision whether he is addressing the supportability factor or the consistency factor. The ALJ's specific references to the May 19 treatment records attached to the assessment suggest the ALJ believed these were offered by Dr. Ellena as support of his opinion, and that ALJ was treating those records as such. However, it is unclear if the ALJ's references to "treatment notes[,]" "examinations[,]" "objective testing," and "the objective record" are references to care provided by Dr. Ellena or by other providers.[5] The ALJ's failure to articulate exactly what evidence he was relying upon renders it impossible to determine whether the ALJ's explanations were intended to evaluate the supportability of Dr. Ellena's opinion or its consistency with the other evidence in the record.[6] Consequently, the Court is unable to provide meaningful review of the question of whether the ALJ fulfilled the regulatory requirements for evaluating the persuasiveness of the medical opinion by considering and explaining both factors.[7] Accordingly,

---

[5] There is the additional issue of whether, or the extent to which, Dr. Ellena's opinion was based upon the other evidence in the record beyond his treatment, such as medical records from other providers.

[6] Again, supportability relates to the objective medical evidence and supporting explanations presented by the medical source in support of his or her opinion, meaning it is an assessment of how well a medical source supported and explained his or her opinion. 20 C.F.R. §§ 404.1520c (c)(1); 416.920c (c)(1); Daniels, 2022 WL 2919747, at *5. The ALJ may consider whether the physician's own treatment notes support the physician's opinion. Starman, 2021 WL 4459729, at *4. Consistency relates to how consistent the medical opinion is with the evidence from other medical and nonmedical sources, meaning how well a medical opinion is supported by the entire record. 20 C.F.R. §§ 404.1520c (c)(2); 416.920c (c)(2); Daniels, 2022 WL 2919747, at *5.

[7] The obstacles presented by the ALJ's failure to articulate the basis for his conclusion permeates his entire "explanation," even when he references a specific record. One example includes the ALJ's finding that Dr. Ellena's opinion was not persuasive because "the mental status examination [at the May

the ALJ's failure to consider the supportability and consistency of Dr. O'Day's and Dr. Ellena's opinions warrants remand.[8]

Furthermore, the Court cannot conclude that the ALJ's error was harmless. An error is harmless if "'[t]here is no indication that the ALJ would have decided differently' if the error had not occurred." Grindley v. Kijakazi, 9 F.4th 622, 629 (8th Cir. 2021) (quoting Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008)). Here, Plaintiff has provided the requisite indication.

The ALJ found Dr. O'Day's opinion to be persuasive and largely adopted his proposed limitations into Plaintiff's RFC. Although the ALJ included a limitation of frequent handling and fingering in Plaintiff's RFC, the ALJ rejected Dr. Ellena's limitation of only occasional manipulation of the fingers and his limitations on siting, standing, and walking. The vocational expert testified that the jobs of photocopy machine operator, mail sorter, and price marker were all light work and were incompatible with a limitation of only occasional handling and fingering. (Tr. 323-324) The ALJ also did not credit Dr. Ellena's opinion that Plaintiff needed hourly breaks or that she would miss work more than four days per month. The vocational expert testified at the hearing that exceeding the customary break and absence limitations would preclude competitive

---

19, 2020 appointment] had a depression screening that was below the threshold for administering the screening." While not explicitly stated by the ALJ, the suggestion is that Dr. Ellena's opinions regarding Plaintiff's mental health diagnoses and associated limitations are unsupported based on the May 19, 2020 treatment notes. The ALJ's "supportability" explanation, however, fails to account for the fact that Dr. Ellena's treatment notes dating back to January 2014 consistently document Plaintiff's depression and anxiety. (Tr. 578-670, 922-998, 1265-1298) Nor does the ALJ evaluate whether Dr. Ellena's opinion is consistent with treatment records from other medical providers documenting Plaintiff's depression and anxiety. (Tr. 1299- 1322, 1399-1433, 1434-1530, 1531-1537, 1538-1540)

[8] The parties also appear to be uncertain of how to classify the ALJ's explanation and how to address the relevant factors. In support of their arguments concerning the supportability of Dr. Ellena's opinion, both parties cite to various medical records contained in the record, including Dr. Ellena's past treatment records and those from other providers. [ECF Nos. 27, 34] The parties do not differentiate between medical providers and provide no argument or support for why evidence from other providers should be considered as supporting or not supporting Dr. Ellena's opinion as opposed to whether this evidence is consistent with Dr. Ellena's opinion. Some of the parties' arguments may be better classified as arguments that Dr. Ellena's opinion was either consistent or inconsistent with the record, not whether Dr. Ellena provided support for and explained his opinion.

employment. (Tr. 323). The ALJ's failure to address the supportability and consistency of the competing opinions indicates that the ALJ's decision may have been different if he had properly evaluated the opinions. Accordingly, the Court reverses and remands this matter, and instructs the ALJ to consider and explain in his determination how persuasive he finds all of the medical opinions and prior administrative medical findings in the case record in accordance with 20 C.F.R. §§ 404.1520c and 416.920c. Because the ALJ will need to reassess all of the evidence on remand in determining Plaintiff's RFC, the Court need not address Plaintiff's remaining arguments.

## VI.  Conclusion

For the reasons sets forth above, the Court reverses and remands the decision of the Commissioner to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED**, and the case is **REMANDED** to the Commissioner for further consideration consistent with this Memorandum and Order.

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 1st day of March, 2023